GRACEY, JUDGE:
This claim was filed by Stephen Gregg and Emma Gregg, who were husband and wife on September 27,1977, when Stephen Gregg was injured and rendered paraplegic. His claim is for damages incident to his injuries. Her claim is for loss of consortium.
Respondent had entered into a contract with Restoration of Missouri, Inc. for certain renovation work on the state capítol building. The work involved sandblasting, cleaning, caulking, etc. The skilled labor, bricklayers, were hired through a bricklayers' union, Local No. 9. The unskilled labor, laborers, were hired through a laborers' union, Local No. 1353. Both unions had a foreman and steward on the job. Stephen Gregg had been assigned to the job by the laborers’ union and served as a bricklayers' tender. As such, his work involved cleaning up after sandblasting, filling sand pots, helping with installation of scaffolding from the ground and helping *52 with the horizontal relocation of suspended scaffolding. He had never had any previous occasion to be on a suspended scaffold, and had had no instruction concerning them or the use of the motors at each end, the safety belts, etc.
As the result of rain on that morning, it had been decided to shut the job down at mid-day. This would include securing the suspended scaffolds well above ground level to avoid unauthorized use and vandalism. Gregg testified that he was told by one of his superiors to go around to the area where he was working that day and do whatever he could to help shut the job down for the day. His recollection was that a Gary Holley, a bricklayer, had asked him to help Mike Crislip, an apprentice bricklayer, raise the suspended scaffold, from which he fell, to a second floor window level. Mike Crislip had been left, by his fellow bricklayers, to raise the scaffold by himself. He testified that he had raised its right end a few feet, and was about to move to its other end to raise that end, when Jerry Holley, a bricklayer, had told Gregg, "Help him do that" and Gregg had jumped up on the scaffold. Gregg may have put on a safety belt, but the evidence was not clear as to whether he had put it on properly, had properly connected it or whether he would have been saved from hitting the ground, when he fell, if the belt was properly worn and connected.
As the scaffold was being raised, some part of it caught at the top of the first window. Crislip told Gregg to "Kick out", and the scaffold started up again. Apparently, it got caught again on a belt course, a cornice type protrusion. Crislip testified that he heard the engine grinding and said to Gregg, "Let go of the engine"; that when he looked back again, Gregg had fallen. Gregg's account of the occurrence is:
"Well, I got on the scaffold and I can't remember if I put a safety belt on or not. If I did, it wasn't tied on, I didn't know how, but I just didn't see no harm in it. He said just push in on the button when I push in 'til we get to the second floor, so we were pushing simultaneously the buttons and was going up and the next thing I remember, my side was hung up under a ledge or something of the wall and I still had my hand on the motor. He had his hand on his motor and the next thing I knew he said to kick out from the wall a little bit and at that time the scaffold bumped out I'd say five to eight feet, enough for me to tumble and do a somersault off the building."
Claimants contend that the respondent had failed in a duty to provide a safe work place, citing regulations under the Occupational Safety and Health Act (OSHA). These regulations require, on the open sides of such a scaffold, under certain conditions, a top guard rail, a mid rail, and a toe board. None were in place on the building side of the suspended scaffolds used on this job. Apparently, no complaint was ever made about this by the bricklayers who worked on the scaffolds, by the union foremen or stewards or by Appalachian Engineers, Inc., a company which *53 had been employed by respondent to oversee the work but excluded from safety responsibilities in its contract.
This Court views this claim as one which can be presented only to the Workers' Compensation Fund (W.Va. Code, Chapter 23). (See also W.Va. Code 14-2-14 (2). Assuming a contractor's employees to be employees of the owner, the State in this instance, an employee would have a case of action against the owner only if the injury resulted from the deliberate intention of the employer to produce such injury (See W.Va. Code 23-4-2 as adopted by the 1969 Legislature, Chapter 152). This Court finds no such deliberate intention in the evidence presented.
Claim disallowed.
Judge Hanlon did not participate in the hearing or decision of this claim.